# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HARVEY CURTIS BAKER, | Case No.  1:12-cv-00126-LJO-SAB |
| Plaintiff, | ORDER GRANTING IN PART, DENYING IN PART PLAINTIFF'S MOTION TO COMPEL FURTHER RESPONSES TO REQUEST FOR PRODUCTION OF DOCUMENTS, AND DENYING PLAINTIFF'S REQUEST FOR COUNSEL |
| v. | |
| S. MOORE, | |
| Defendant. | (ECF No. 95) |

Plaintiff Harvey Curtis Baker ("Plaintiff") is appearing pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983.

## I.

## PROCEDURAL HISTORY

On January 27, 2012, Plaintiff filed this action.  This action is proceeding on Plaintiff's First Amended Complaint ("FAC") against Defendant S. Moore ("Defendant") for deliberate indifference in violation of the Eighth Amendment for an incident that occurred on March 19, 2010.

On September 25, 2014, Plaintiff filed a request for a subpoena duces tecum to request certain documents from third party California Department of Corrections and Rehabilitation ("CDCR").  (ECF No. 75.)  On March 4, 2015, the Court denied Plaintiff's motion for issuance of a subpoena duces tecum, and directed Defendant's counsel, within twenty-one days of the date of service of that order, to review the request for documents attached to Plaintiff's motion for

subpoena duces tecum and inform Plaintiff in writing whether there may be responsive documents in CDCR's possession, custody, or control that were withheld from Plaintiff on the contention that such documents were not within the possession, custody, or control of Defendant. (ECF No. 81.)

On May 29, 2015, Plaintiff filed a request to postpone discovery cut-off, dispositive motion, and trial dates due to Defendant's non-compliance with the Court's prior order. (ECF No. 82.) On July 31, 2015, the Court ordered counsel for Defendant to coordinate with CDCR to provide a response to Plaintiff's requests as if they had been served with a formal subpoena. (ECF No. 87.) On August 12, 2015, Plaintiff served a Request for Production on Defendant for response by CDCR. (ECF No. 95 at 46-47.) [1] On September 23, 2015, CDCR through Defendant served responses to Plaintiff's Request for Production along with a privilege log and a supporting declaration regarding documents that would not be produced due to their confidential nature. (ECF No. 95 at 49-91.)

On October 19, 2015, Plaintiff filed his second motion for an extension of time to file his opposition to Defendant's motion for summary judgment and indicated that he would be filing a motion to compel discovery "very soon." (ECF No. 93.) On October 22, 2015, the Court ordered Plaintiff to file any motion to compel regarding Defendant's response to Plaintiff's discovery request by November 20, 2015. (ECF No. 94.)

On October 23, 2015, Plaintiff filed a motion to compel. (ECF No. 95.) On November 12, 2015, Defendant filed an opposition to Plaintiff's motion to compel. (ECF No. 98.) On November 24, 2015, Plaintiff filed a reply in support of his motion to compel. (ECF No. 101.)

## II.

## COMPLAINT ALLEGATIONS

At all times relevant to this action, Plaintiff was a prisoner within the custody of the California Department of Corrections and Rehabilitation ("CDCR") and incarcerated at

---

[1] All page references are the ECF page numbers at the top of the page.

1  California State Prison-Pleasant Valley ("PVSP").  (FAC ¶ 4.)  Defendant is a correctional

2  officer at PVSP.  (Compl. ¶ 5.)

3      Plaintiff alleges that PVSP B-Yard had been on a "lockdown, modified program" for two

4  years prior to the incident alleged in Plaintiff's complaint.  (FAC ¶ 6.)  Under this program, all

5  "Bulldog Prisoners" were to be placed in restraints before exiting any cell or holding tank and be

6  escorted.  (FAC ¶ 7.)  Plaintiff alleges that it was well known that Bulldog Prisoners were

7  assaulting any and all "white unaffiliated prisoners" on sight at any opportunity.  (FAC ¶¶ 8-9.)

8  Plaintiff alleges that Bulldog Prisoners were to be segregated from white prisoners at all times

9  during the lock-down modified program.  (FAC ¶ 10.)  Plaintiff was a white unaffiliated

10  prisoner.  (FAC ¶ 11.)

11      On March 19, 2010, Plaintiff was being escorted to the correctional treatment center for a

12  surgery appointment.  (FAC ¶ 11.)  Upon his arrival at the treatment center, Plaintiff was placed

13  inside a "B-yard holding tank" which consisted of a mail cell and three small adjacent cells

14  attached to the main cell.  (FAC ¶ 14.)  In an adjacent cell to the left, there were three Bulldog

15  Prisoners.  (FAC ¶ 15.)

16      Fifteen minutes after Plaintiff's arrival, Defendant went to the adjacent cell holding the

17  three Bulldog Prisoners and opened the cell without placing restraints on the prisoners.  (FAC ¶

18  17.)  Defendant then yelled "BULLDOGS" and the three Bulldog Prisoners ran past her and into

19  the main holding tank where Plaintiff was held.  (FAC ¶ 18.)  Defendant did nothing to stop the

20  Bulldog Prisoners, who proceeded to attack Plaintiff.  (FAC ¶ 19.)  At some point in time, other

21  correctional officers arrive at the scene and began to beat all the prisoners involved in the scuffle,

22  including Plaintiff.  (FAC ¶ 21.)  Plaintiff was also pepper sprayed.  (FAC ¶ 21.)  Plaintiff was

23  not fighting back or resisting the correctional officers.  (FAC ¶ 22.)

24      Plaintiff alleges that he received a head injury, facial disfigurement of his right eye,

25  sutures and severe scarring above his left eye, blurred vision in both eyes, upper bridge

26  displacement with severe lacerations to the inside of the mouth, lower back trauma with ongoing

27  extreme pain, right hand dysfunction with continuing extreme pain, mental trauma, including

28  paranoia, hearing voices, unjustified mistrust of others, believing everyone is out to do harm, and

1   believing all correctional officers are out to set up and place bets on staged gladiator fights,

2   severe headaches, continuous suffering and pain from the physical injuries and shame,

3   humiliation, degradation,  emotional embarrassment, and mental distress, and irreparable harm.

4   (FAC ¶¶ 23, 27.)

5   Plaintiff alleges that Defendant "failed to follow CDCR policies and procedures related to

6   prisoner safety during a lockdown modified program situation, as she was trained to do to, and as

7   a result she violated plaintiff's right to be free from cruel and unusual punishment."  (FAC ¶ 37.)

8   Plaintiff also alleges that Defendant "knew or should have known that her conduct, attitudes, and

9   actions created an unreasonable risk of serious harm for [P]laintiff."  (FAC ¶ 52.)

10   **III.**

11   **LEGAL STANDARD**

12   Plaintiff is proceeding pro se and he is a state prisoner challenging his conditions of

13   confinement.  As a result, the parties were relieved of some of the requirements which would

14   otherwise apply, including initial disclosure and the need to meet and confer in good faith prior

15   to involving the Court in a discovery dispute.  Fed. R. Civ. P. 26(a)(1); Fed. R. Civ. P. 26(c);

16   Fed. R. Civ. P. 37(a)(1); Local Rule 251; ECF No. 74, Discovery and Scheduling Order, ¶4.

17   The discovery process is subject to the overriding limitation of good faith, and callous

18   disregard of discovery responsibilities cannot be condoned.  Asea, Inc. v. Southern Pac. Transp.

19   Co., 669 F.2d 1242, 1246 (9th Cir. 1981) (quotation marks and citation omitted).  Parties may

20   obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or

21   defense, and for good cause, the Court may order discovery of any matter relevant to the subject

22   matter involved in the action.  Fed. R. Civ. P. 26(b)(1) (quotation marks omitted).  Relevant

23   information need not be admissible at the trial if the discovery appears reasonably calculated to

24   lead to the discovery of admissible evidence.  Id. (quotation marks omitted).

25   Generally, if the responding party objects to a discovery request, the party moving to

26   compel bears the burden of demonstrating why the objections are not justified.  Grabek v.

27   Dickinson, No. CIV S-10-2892 GGH P, 2012 WL 113799, at *1 (E.D. Cal. Jan. 13, 2012);

28   Womack, 2011 WL 6703958, at *3; Mitchell v. Felker, No. CV 08-119RAJ, 2010 WL 3835765,

4

1   at *2 (E.D. Cal. Sep. 29, 2010); Ellis v. Cambra, No. 1:02-cv-05646-AWI-SMS PC, 2008 WL

2   860523, at *4 (E.D. Cal. Mar. 27, 2008).  This requires the moving party to inform the Court

3   which discovery requests are the subject of the motion to compel, and, for each disputed

4   response, why the information sought is relevant and why the responding party's objections are

5   not meritorious.  Grabek, 2012 WL 113799, at *1; Womack, 2011 WL 6703958, at *3; Mitchell,

6   2010 WL 3835765, at *2; Ellis, 2008 WL 860523, at *4.  However, the Court is vested with

7   broad discretion to manage discovery and notwithstanding these procedures, Plaintiff is entitled

8   to leniency as a pro se litigant; therefore, to the extent possible, the Court endeavors to resolve

9   his motion to compel on its merits.  Hunt v. County of Orange, 672 F.3d 606, 616 (9th Cir.

10  2012); Surfvivor Media, Inc. v. Survivor Productions, 406 F.3d 625, 635 (9th Cir. 2005); Hallett

11  v. Morgan, 296 F.3d 732, 751 (9th Cir. 2002).

12                                          **IV.**

13                               **MOTION TO COMPEL**

14          Plaintiff moves to compel Defendant to further answer Plaintiff's Request for Production,

15  specifically, Requests 1-5, 8-10, and 19-23, and Plaintiff requests Defendant's training materials.

16  In opposition, Defendant has explained the objections and set forth the documents initially and/or

17  subsequently produced in response to Plaintiff's requests.  Plaintiff's Request for Production did

18  not include a request for Defendant's training materials.  Plaintiff first made this request in his

19  motion to compel.  Therefore, Petitioner's request for Defendant's training materials is DENIED.

20           Because Plaintiff's Requests 1 through 4 are for similar documents, the parties assert the

21  same arguments in support of their respective positions as to each Request for Production, and

22  the Court's ruling applies equally to Plaintiff's Requests 1 through 4, the Court will rule on these

23  requests as a whole instead of ruling on them individually.  For the same reasons, the Court will

24  rule on Plaintiff's Requests 9 and 10 together, and then also rule on Requests 20 and 21 together.

25          **A.       Request for Production Nos. 1-4**

26          **Request for Production No. 1:**

27                  All PVSP intra-institutional memoranda, including directives to
                    correctional officers via Post Order(s), Captain's Reports, Warden's
28                  Notes, Program Status Memo, or any other written source, which

document, describe, detail, or react via policy decision, to the triggering event, including lockdown order(s) or modified program order(s).

**Request for Production No. 2:**

All correspondence, of any type, between PVSP and CDCR Headquarters, which document, describe, detail, or react via policy decision, to the triggering event, including lockdown order(s) or modified program order(s), or approvals or disapprovals from CDCR Headquarters of PVSP actions, taken as a result of the triggering event.

**Request for Production No. 3:**

All PVSP intra-institutional memoranda, including directives to Correctional Officers via Post Order(s), Captain's Reports, Warden's Notes, Program Status Memos, or any other written source, which document, describe, detail, or react via policy decision, to the aftermath of the triggering event, including lockdown order(s) or modified program order(s), until all modifications to normal prison programs and activities, put in place as a result of the triggering event, were ceased.

**Request for Production No. 4:**

All correspondence, of any type, between PVSP and CDCR Headquarters, which document, describe, detail, or react via policy decision, to the to the aftermath of the triggering event, including lockdown order(s) or modified program order(s), or approvals or disapprovals from CDCR Headquarters of PVSP actions, taken in the aftermath of the triggering event, until all modifications to normal prison programs and activities, put in place as a result of the triggering event, were ceased.

**Response to Request for Production Nos. 1-4:**

Objection. The request is overbroad as to time, and thus seeks irrelevant documents and is not reasonably calculated to lead to admissible evidence. Program Status Reports (PSR) PVP- FBP-09-07-0248, Parts A and C will not be produced because they are deemed confidential by the California Department of Corrections and Rehabilitation and disclosure of PSR Parts A and C could jeopardize the safety and security of the institution (i.e., staff and inmates), and the general public, if disclosed. Cal. Code Regs. tit. 15, §§ 3321(a) and 3450(d); Cal. Gov't Code § 6254(c) and (f); Cal. Penal Code §§ 832.7 and 6126.3; Cal. Evid. Code §§ 1040, 1043, and 1045; the self- critical analysis privilege; the official-information privilege; and the deliberative-process privilege. (See Declaration of K. Geringer and Privilege Log.) Without waiving said objections, Responding Party will produce PSR PVP-FBP-09-07-0248, Part B which sets forth the exact parameters of the

modified program, including escort during movement and medical program. PSR Part B describes the program governing the Fresno Bulldogs from the Triggering Event on July 16, 2009 until after the March 19, 2010 Incident but does not contain any confidential information. (*Id.*)

**Analysis and Ruling on Requests for Productions Nos. 1-4:**

Plaintiff "wants each day's security status of the prison—stated in writing—as it is was there, each day, to notify staff—and [Plaintiff] SEEKS to document how that status changed, from day to day, from the triggering event forward to the date of the incident, when [Plaintiff] was attacked." (ECF No. 101 at 7.)  The event that triggered the modified program was a riot that occurred on July 16, 2009 involving Bulldogs and other inmates.  Plaintiff seeks information about why the lockdown was ongoing for the Bulldog prisoners and what else they did after the triggering event that made it go on for so long.  Plaintiff wants this information in order to show that Defendant had notifications about how to perform her job duties during the lockdown or modified program.  Plaintiff notes that he is no longer a prisoner at PVSP, so if he has access to Parts A and C of the PSR, there will be no impact on safety at PVSP.

Notwithstanding Defendant's objections, Defendant produced PSR PVP-FBP-09-07-0248, Part B, dated July 16, 2009.  (ECF No. 95 at 29.)  Defendant indicates that PSR Part B describes the program governing the Fresno Bulldogs from the triggering event on July 16, 2009 until after the March 19, 2010 incident, but does not contain any confidential information.  Defendant argues in her opposition to Plaintiff's motion to compel that "PSR Part B contains the orders for Bulldog escorts from the triggering event to the day of the incident."  (ECF No. 98 at 7.)

Where otherwise discoverable information would pose a threat to the safety and security of the prison or infringe upon a protected privacy interest, a need may arise for the Court to balance interests in determining whether disclosure should occur.  See Fed. R. Civ. P. 26(c); Seattle Times Co. v. Rhinehart, 467 U.S. 20, 35 n.21, 104 S.Ct. 2199 (1984) (privacy rights or interests implicit in broad purpose and language of Rule 26(c)); Burlington N. & Santa Fe Ry. Co. v. United States Dist. Court for the Dist. of Montana, 408 F.3d 1142, 1149 (9th Cir. 2005)

1 (discussing assertion of privilege); <u>Soto v. City of Concord</u>, 162 F.R.D. 603, 616 (N.D. Cal.

2 1995) (recognizing a constitutionally-based right of privacy that can be raised in discovery); <u>see</u>

3 <u>also</u> <u>Garcia v. Clark</u>, No. 1:10-CV-00447-LJO-DLB PC, 2012 WL 1232315, at *6 n.5 (E.D. Cal.

4 Apr. 12, 2012) (noting inmate's entitlement to inspect discoverable information may be

5 accommodated in ways which mitigate institutional safety concerns); <u>Robinson v. Adams</u>, No.

6 1:08-cv-01380-AWI-BAM PC, 2012 WL 912746, at *2-3 (E.D. Cal. Mar. 16, 2012) (issuing

7 protective order regarding documents containing information which implicated the safety and

8 security of the prison); <u>Orr v. Hernandez</u>, No. CV-08-0472-JLQ, 2012 WL 761355, at *1-2 (E.D.

9 Cal. Mar. 7, 2012) (addressing requests for protective order and for redaction of information

10 asserted to risk jeopardizing safety and security of inmates or the institution if released);

11 <u>Womack v. Virga</u>, No. CIV S-11-1030 MCE EFB P, 2011 WL 6703958, at *5-6 (E.D. Cal. Dec.

12 21, 2011) (requiring defendants to submit withheld documents for in camera review or move for

13 a protective order).

14      **Ruling:**

15      Part B of the PSRs show whether the program is normal, modified, lockdown, or state of

16 emergency, the area affected, the race of inmates affected, the reason for the program change,

17 and information about restrictions to movement, feeding, ducats, visiting, workers, showers,

18 medical, legal library, dayroom, recreation, canteen, packages, phone calls, and religious

19 services. Whether Bulldog inmates had restrictions from July 16, 2009 until March 19, 2010, is

20 relevant to Plaintiff's claim. Whether Defendant was aware that Bulldog inmates were a threat

21 to white inmates is a fact that is relevant to establishing that Defendant should be held liable to

22 Plaintiff. Although Defendant argues in her motion for summary judgment that PSRs were not

23 posted in the CTC or given to CTC Correctional Staff in 2010, what information was available to

24 CDCR employees at the prison may be relevant to Plaintiff's claim because it is relevant to what

25 Defendant knew about the lockdown restrictions to Bulldog inmates, especially in light of

26 Defendant admitting that she knew that Bulldogs were on lockdown. Therefore, the information

27 that Plaintiff seeks is relevant.

28      Defendant produced PSR **PVP-FBP-09-07-0248**, Part B, dated July 16, 2009. (ECF No.

95 at 29.)  The Court notes that there may be additional Part B pages of PSRs between July 16, 2009 and March 19, 2010, which describe the program governing the Fresno Bulldogs as a result of the July 16, 2009 triggering event.  These PSR Part B pages are relevant because they may contain orders for Bulldog escorts between the July 16, 2009 triggering event and the date that Plaintiff was attacked.  To the extent that there are additional Part B pages of PSRs between July 16, 2009 and March 19, 2010, which describe the program governing the Fresno Bulldogs as a result of the July 16, 2009 triggering event, even if they are identical to the Part B page that Defendant has already produced, Defendant should produce these Part B pages.

As to Plaintiff's request for Parts A and C of PSR PVP-FBP-09-07-0248, such documentation is confidential, as set forth in the declaration of Geringer. (Geringer Decl., ECF No. 95 at 68-69.)  Plaintiff is not entitled to production of confidential PSR parts because, as explained by Geringer, disclosure of such information would pose a threat to the safety and security of institutional staff, inmates, or the public.  As the objections asserted by Defendant to Parts A and C are valid, and Defendant has submitted a good faith response to this Request, the Court will not require Defendant to produce Parts A and C.  In addition, any Part B pages that the Court is ordering Defendant to produce should reveal any changes to the modified program of Yard B during the relevant time period.  Plaintiff is advised that the Court can and will review any relevant confidential documentation if necessary to properly address his claim.

Plaintiff's motion to compel a further response to Request for Production Nos. 1-4 is GRANTED IN PART, DENIED IN PART.  Defendant shall produce a copy of all of the Part B pages of PSRs between July 16, 2009 and March 19, 2010, which describe the program governing the Fresno Bulldogs as a result of the July 16, 2009 triggering event.

### B.   Request for Production No. 5

> All written orders to PVSP staff, in any form, that stated correctional staff were to prevent any co-mingling of white and segregated bulldog inmates, absent mechanical restraints (handcuffs), from the date of the triggering event, to the time of the incident.

**Response:**

"Respondent CDCR states that it is unable to comply with Request for Production No. 5

1   because the documents requested have never existed."

2   **Analysis and Ruling on Request for Production No. 5:**

3   Plaintiff argues that Defendant has provided proof that such documents do exist by

4   providing Part B of PSR PVP-FBP-09-07-0248.  Plaintiff seeks the documents that Defendant

5   read, from the triggering event to the date of the incident, about who and who should not be

6   allowed to intermingle without mechanical restraints due to ongoing emergency conditions.

7   Alternatively, Plaintiff seeks a stipulation that each and every day Defendant entered PVSP,

8   from the triggering event to the date of the incident, she was apprised in writing who and who

9   should not be allowed to intermingle without mechanical restraints due to ongoing emergency

10  conditions.  Defendant argues that Plaintiff's argument fails because neither PSR PVP-FBP-09-

11  07-0248, nor any other document states that correctional staff was to prevent any co-mingling of

12  white and segregated bulldog inmates, absent mechanical restraints (handcuffs).  Geringer states

13  that the described documents in this request do not exist.  (Geringer Supp. Decl., ECF No. 98-1 at

14  1.)

15  **Ruling:**

16  Plaintiff offers no facts, only speculation that such documents do exist.  PSR PVP-FBP-

17  09-07-0248 Part B, dated July 16, 2009, does not indicate that PVSP staff was to prevent any co-

18  mingling of white and segregated bulldog inmates absent handcuffs.  (ECF No. 95 at 66.)  At this

19  juncture, Defendant's representation that documents regarding written orders to PVSP staff that

20  stated correctional staff was to prevent any co-mingling of white and segregated bulldog inmates,

21  absent handcuffs, from the date of the triggering event, to the time of the incident, does not exist

22  must be accepted at face value.  Absent evidence to the contrary, not present here, Plaintiff is

23  required to accept Defendant's representation that such documentation either does not exist or

24  cannot be located, and Defendant cannot be compelled to provide copies of documents that do

25  not exist.  However, Defendant is advised of her duty to supplement disclosure if such

26  documentation is discovered.  Fed. R. Civ. P. 26(e)(1)(A).  Therefore, Plaintiff's motion to

27  compel a further response to Request for Production No. 5 is DENIED.

28  \ \ \

10

## C.        Request for Production No. 8

"Plaintiff seeks: Any and all documents that describe procedures and practices relating to the escort and handling of inmates at PVSP during a lockdown or modified program."

**Response:**

> Objection. The request is overbroad as to time, and thus seeks irrelevant documents and is not reasonably calculated to lead to admissible evidence. Program Status Reports (PSR) PVP- FBP-09-07-0248, Parts A and C will not be produced because they are deemed confidential by the California Department of Corrections and Rehabilitation and disclosure of PSR Parts A and C could jeopardize the safety and security of the institution (i.e., staff and inmates), and the general public, if disclosed. Cal. Code Regs. tit. 15, §§ 3321(a) and 3450(d); Cal. Gov't Code § 6254(c) and (f); Cal. Penal Code §§ 832.7 and 6126.3; Cal. Evid. Code §§ 1040, 1043, and 1045; the self- critical analysis privilege; the official-information privilege; and the deliberative-process privilege. (See Declaration of K. Geringer and Privilege Log.) Without waiving said objections, Responding Party will produce PSR PVP-FBP-09-07-0248, Part B which sets forth the exact parameters of the modified program, including escort during movement and medical program. PSR Part B describes the program governing the Fresno Bulldogs from the Triggering Event on July 16, 2009 until after the March 19, 2010 Incident but does not contain any confidential information. (*Id.*)

**Analysis and Ruling on Request for Production No. 8:**

Plaintiff states that his request cannot be overbroad as to time unless the policies changed between the dates at issue, the triggering event and the date of the incident.  Plaintiff argues that he is seeking CDCR "definitions" that describe what level of escort and security were at each stage from the triggering event to the date of the incident.  Plaintiff also argues that the documents that he seeks are in "plain view" each day for inmates to see.  Geringer states that the "level of escort security" for the Bulldogs from the trigging event to the day of the incident is set forth in PSR Part B.  (Geringer Decl., ECF No. 95 at 70-71.)  Thus, Defendant argues that she has produced the documents which show what the level of security was during the relevant time period and there is nothing further to produce.

**Ruling:**

To the extent that Plaintiff seeks documents after the incident on March 19, 2010, the documents are not relevant to whether Defendant violated Plaintiff's civil rights in connection

with this incident.  It appears that Plaintiff is stating that the only time period that he seeks the procedures and practices relating to the escort and handling of inmates at PVSP during a lockdown or modified program for is between July 16, 2009 and March 19, 2010, which is relevant to whether Defendant violated Plaintiff's civil rights in connection with this incident.

As the Court stated above, the Court finds that disclosure of Parts A and C could jeopardize the safety and security of the institution and the general public, but orders Defendant to produce a copy of all of the Part B pages of PSRs between July 16, 2009 and March 19, 2010, which describe the program governing the Fresno Bulldogs as a result of the July 16, 2009 triggering event.  Therefore, Plaintiff's motion to compel a further response to Request for Production No. 8 is GRANTED IN PART, DENIED IN PART.  Defendant shall produce a copy of all of the Part B pages of PSRs between July 16, 2009 and March 19, 2010, which describe the program governing the Fresno Bulldogs as a result of the July 16, 2009 triggering event.

### D.  Request for Production Nos. 9-10

**Request for Production No. 9:**

"All photos taken, of any party to the incident, on the date of the incident."

**Request for Production No. 10:**

"All photos, taken on the date of the incident or after, during the investigation of the incident, including pictures of the area of the incident."

**Response to Request for Production Nos. 9-10:**

"Respondent CDCR states that it has made a reasonable search and inquiry and it is unable to comply with Request For Production No. 9 [and 10] because the documents requested have never existed."

**Analysis and Ruling on Request for Production Nos. 9-10:**

Plaintiff argues that he knows that photos were taken because he was there.  Plaintiff argues that only somebody not involved with prison litigation would believe that this incident occurred without photos.  Plaintiff states in his reply that if he could show that the officers who used force on him had a recent history of using excessive force on others, then it would be more likely that they used excessive force on him.   Defendant argues that there are no photos of any

1  party to the incident, on the date of the incident, and that there is no indication from the incident
2  report or any other document that photos were taken in regards to the incident.  Geringer states
3  that it would not be unusual for no photos to be taken because the incident occurred under
4  multiple staff's direct observation, the Medical Report of injury (CDC form No. 7219)
5  documented all injuries sustained as a result of the incident, and there were no inmate weapons
6  involved.  (Geringer Supp. Decl., ECF No. 98-1 at 2.)  Also, Geringer states that the Correctional
7  Treatment Center ("CTC") did not have video surveillance in 2010, so there are no videos of the
8  incident.  (Geringer Supp. Decl., ECF No. 98-1 at 2.)

9  **Ruling:**

10  Plaintiff has not demonstrated that Defendant's response is deficient or incomplete.
11  Absent evidence to the contrary, which is not present here, Plaintiff is required to accept
12  Defendant's response that there are no photographs regarding the incident.  However, Defendant
13  is advised of her duty to supplement disclosure if such photographs are discovered.  Fed. R. Civ.
14  P. 26(e)(1)(A).  Therefore, Plaintiff's motion to compel a further response to Request for
15  Production Nos. 9-10 is DENIED.

16  **E.      Request for Production No. 19**

17  All PVSP intra-institutional memoranda, of any kind, which
18  document, describe, detail, or react via policy decision, to on sight
    or other attacks by segregated Bulldog inmates on white inmates
19  from the date of the triggering event to the date of the incident.

20  **Response:**

21  Assuming Plaintiff seeks documents other than those regarding the
    Incident, Respondent CDCR states that it has made a reasonable
22  search and inquiry and that it is unable to comply with Request for
    Production No. 19 because the documents requested have never
23  existed.

24  **Analysis and Ruling on Request for Production No. 19:**

25  Plaintiff argues that there actually are documents in response to these requests, because
26  he is personally aware of one attack by Bulldogs on a white inmate during the lockdown or
27  modified program and is informed that one other attack occurred as well.  Defendant argues that
28  Plaintiff has been misinformed that Bulldogs attacked other inmates twice during the relevant

1  time period.  Defendant also argues that Plaintiff's belief is based on unsubstantiated hearsay.

2  Geringer states that there were no other attacks by Bulldog inmates on white inmates from the

3  date of the triggering event to the date of the incident.  (Geringer Supp. Decl., ECF No. 98-1 at

4  2.)

5       **Ruling:**

6       Although Plaintiff argues that there actually are documents in response to this request,

7  Plaintiff must accept Defendant's response that there never have been any documents relating to

8  this request.  Plaintiff's bare assertion in his motion that there actually are documents regarding

9  this request and that Defendant and CDCR did not locate all documents is baseless.  However,

10 Defendant is advised of her duty to supplement disclosure if such documentation is discovered.

11 Fed. R. Civ. P. 26(e)(1)(A).  Therefore, Plaintiff's motion to compel a further response to

12 Request for Production No. 19 is DENIED.

13       **F.     Request for Production Nos. 20-21:**

14       **Request for Production No. 20:**

15       All correspondence between PVSP and CDCR Headquarters, of
         any kind, which document, describe, detail, or react via policy
16       decision, to on sight or other attacks by segregated Bulldog
         inmates on other inmates, from the date of the triggering event to
17       the date of the incident, at PVSP?

18       **Request for Production No. 21:**

19       All correspondence by or from CDCR Headquarters, of any kind,
         to or from any prison, which documents, describes, details, or
20       reacts via policy decision, to on sight or other attacks by segregated
         Bulldog inmates on other inmates, from the date of the triggering
21       event to the date of the incident, at PVSP?

22       **Response to Request for Production Nos. 20-21:**

23       Objection. The request is overbroad as to scope, seeks irrelevant
         documents and is not reasonably calculated to lead to admissible
24       evidence. Without waiving objections, and assuming Plaintiff
         seeks documents other than those regarding the Incident,
25       Respondent CDCR states that it has made a reasonable search and
         inquiry and that it is unable to comply with Request For
26       Production No. 20 because the documents requested have never
         existed.

27

28 \\\

1      **Analysis and Ruling on Request for Production Nos. 20-21:**

2          Plaintiff seeks evidence that shows what supervisors would have been telling line

3  correctional staff, such as to watch out for incidents like what happened to Plaintiff.  Plaintiff

4  also seeks CDCR's warning to the prisons after the Bulldogs attacked people while segregated.

5  Plaintiff asserts that he is entitled to documents proving that the Bulldogs and other gangs were

6  the subject of warnings to prisons from CDCR Headquarters about attacks of other groups even

7  while segregated.  Defendant argues that Plaintiff has been misinformed that Bulldogs attacked

8  other inmates twice during the relevant time period.  Defendant also argues that Plaintiff's belief

9  is based on unsubstantiated hearsay.  Geringer states that there were no other attacks by Bulldog

10 inmates on white inmates from the date of the triggering event to the date of the incident.

11 (Geringer Supp. Decl., ECF No. 98-1 at 2.)

12     **Ruling:**

13         Although Plaintiff argues that there actually are documents in response to these requests,

14 Plaintiff must accept Defendant's response that there never have been any documents relating to

15 Plaintiff's bare assertion in his motion that there actually are documents regarding this request.

16 However, Defendant is advised of her duty to supplement disclosure if such documentation is

17 discovered.  Fed. R. Civ. P. 26(e)(1)(A).  Therefore, Plaintiff's motion to compel a further

18 response to Request for Production Nos. 20-21 is DENIED.

19     **G.     Request for Production No. 22**

20         "Provide a roster, list, daily movement sheet, or other report documenting all inmates

21 placed in, or removed from, the Yard B Holding Cell, at the location where the incident

22 occurred, on the date of the incident."

23     **Response:**

24             Objection.  The request is overbroad as to scope, seeks irrelevant
                documents and is not reasonably calculated to lead to admissible
25             evidence.  The request seeks disclosure of confidential information
                that: 1) may threaten the security of the California Department of
26             Corrections and Rehabilitation and the safety of its staff and
                inmates; 2) cannot be possessed by an inmate, as it is confidential
27             under California Code of Regulations title 15, §§ 3321(a)(1)-(2),
                3450(d)-(e); 3370(b),(d) and (e); 3) is not subject to disclosure
28             under California Government Code § 6254(c) and (f); Cal. Penal

                                         15

Code §§ 832.7 and 6126.3; Cal. Evid. Code §§ 1040, 1043, and 1045; 4) is protected by other individuals' privacy rights (including HIPPA rights), whose rights Responding Party is without authority to waive; 5) protected under the self-critical analysis privilege; 6) protected under the official-information privilege; and 7) protected under the deliberative-process privilege. The request seeks disclosure of confidential information that: 1) may threaten the security of the California Department of Corrections and Rehabilitation and the safety of its staff and inmates; 2) cannot be possessed by an inmate, as it is confidential under California Code of Regulations title 15, §§ 3321(a)(1)-(2), 3450(d)-(e); 3370(b),(d) and (e); 3) not subject to disclosure under California Government Code § 6254(c) and (f); and 4) protected by other individuals' privacy rights, including HIPPA rights, whose rights Responding Party is without authority to waive. Without waiving objections, Respondent CDCR states that it has made a reasonable search and inquiry and that it is unable to comply with Request For Production No. 22 because the documents requested no longer exist because it is beyond the one year retention period of said documents.

**Analysis and Ruling on Request for Production No. 22:**

Plaintiff states that he is seeking who was in the holding cell. Defendant argues that the incident occurred in the CTC holding cell, not the "Facility B Holding Cell." (Geringer Supp. Decl., ECF No. 98-1 at 2-3.) Defendant states that the CTC has only one holding cell, with several sub-cells. (Id.) Defendant states that assuming Plaintiff meant the CTC holding cell, prison staff does not keep a record (electronic or otherwise) of which inmate they place in which sub-cell of the CTC holding cell. (Id.) There were daily rosters, or lists of inmates that were scheduled to be seen for medical appointments in the CTC on particular days, but these lists were not kept electronically and are destroyed after one year. (Geringer Supp. Decl., ECF No. 98-1 at 2-3.) CDCR also keeps movement sheets which record inmates' intra-institutional movements such as to the CTC, law library, visiting, etc. (Id.) The movement sheets are not kept electronically and are destroyed after six months. (Id.) Defendant states that even if such movement sheets were retained, they would only show which inmates went to the CTC, law library, visiting, etc., on a particular day, and would not show which inmate was placed in any particular sub-cell in the CTC. (Geringer Supp. Decl., ECF No. 98-1 at 2-3.)

**Ruling:**

Plaintiff has provided no proof to show that these records are kept electronically or that

there still is a copy of them in existence.   However, Defendant is advised of her duty to supplement disclosure if such documentation is discovered.   Fed. R. Civ. P. 26(e)(1)(A). Therefore, as these records have been destroyed, Plaintiff's motion to compel a further response to Request for Production No. 22 is DENIED.

**H.      Request for Production No. 23**

"Provide a full copy of plaintiffs medical file?"

**Response:**

> Objection. The request is overbroad as to scope and time period, seeks irrelevant documents and is not reasonably calculated to lead to admissible evidence.  Plaintiff's medical file is available for is review by request made to his Correctional Counselor. When prison records are equally available to the plaintiff, the plaintiff must attempt to obtain them through the proper prison channels. Glass v. Diaz, 1:04-CV-5953-AWI-DLB-P, 2007 WL 2022034, at *4 (E.D. Cal. July 9, 2007).  Plaintiff may not use discovery to obtain free copies of documents equally available to him.  See Jones v. Lundy, 1:03-cv-05980-AWI-LJO PC, 2007 WL 214580, at *1 (E.D. Cal. Jan. 25, 2007).

**Analysis and Ruling on Request for Production No. 23:**

Plaintiff argues that he does not have the equal access to his medical file claimed by Defendant.  Plaintiff states that "the odds of plaintiff even being scheduled for a prompt review of his file is a crapshoot, let alone hours to review it being provided (with staff supervision of court)."  (ECF No. 101 at 17.)  Defendant argues that Plaintiff has the opportunity to review his medical records and that Plaintiff has not produced any evidence that he has not been able to review his medical records.  Also, Defendant argues that Plaintiff's request for all his medical records is overbroad, because there are 950 pages of medical records in Plaintiff's file and not all are relevant to this action.

**Ruling:**

Although Plaintiff thinks that he will not be scheduled for a prompt review of his medical file, that does not mean that he does not have the opportunity to review his medical file.  Plaintiff has not submitted a request to his Correctional Counselor to review his medical file.  Therefore, Plaintiff's motion to compel a further response to Request for Production No. 23 is DENIED.

# V.

## REQUEST FOR APPOINTMENT OF COUNSEL

Plaintiff also states that the Court should appoint counsel if there are concerns that he cannot view this confidential information because of his status as a prisoner.  There is no constitutional right to appointed counsel in this action, Rand v. Rowland, 113 F.3d 1520, 1525 (9th Cir. 1997), and the court cannot require any attorney to represent plaintiff pursuant to 28 U.S.C. § 1915(e)(1).  Mallard v. United States District Court for the Southern District of Iowa, 490 U.S. 296, 298 (1989).  However, in certain exceptional circumstances the court may request the voluntary assistance of counsel pursuant to section 1915(e)(1).  Rand, 113 F.3d at 1525.

Without a reasonable method of securing and compensating counsel, the court will seek volunteer counsel only in the most serious and exceptional cases.  In determining whether "exceptional circumstances exist, the district court must evaluate both the likelihood of success on the merits [and] the ability of the [plaintiff] to articulate his claims pro se in light of the complexity of the legal issues involved." Id.  (internal quotation marks and citations omitted).

In the present case, the Court finds that neither the interests of justice nor exceptional circumstances warrant appointment of counsel at this time.  LaMere v. Risley, 827 F.2d 622, 626 (9th Cir. 1987); Terrell v. Brewer, 935 F.2d 1015, 1017 (9th Cir. 1991).  Plaintiff is proceeding on a claim that Defendant allegedly violated the Eighth Amendment, and Plaintiff has thoroughly set forth his allegations in the first amended complaint.  While a pro se litigant may be better served with the assistance of counsel, so long as a pro se litigant, such as Plaintiff in this instance, is able to "articulate his claims against the relative complexity of the matter," the "exceptional circumstances" which might require the appointment of counsel do not exist.  Rand v. Rowland, 113 F.3d at 1525 (finding no abuse of discretion under 28 U.S.C. § 1915(e) when district court denied appointment of counsel despite fact that pro se prisoner "may well have fared better-particularly in the realm of discovery and the securing of expert testimony.")  Based on the record in this case, Plaintiff is able to articulate his claims and litigate this action. Therefore, Plaintiff's request for appointment of counsel is DENIED.

\ \ \

**VI.**

**ORDER**

Accordingly, IT IS HEREBY ORDERED that:

1.    Plaintiff's motion to compel is GRANTED IN PART and DENIED IN PART as follows:

a.    Plaintiff's motion to compel a further response to Request for Production Nos. 1-4 and 8 is GRANTED IN PART, and **no later than March 14, 2016**, Defendant shall provide Plaintiff with a copy of all of the Part B pages of PSRs between July 16, 2009 and March 19, 2010, which describe the program governing the Fresno Bulldogs as a result of the July 16, 2009 triggering event;

b.    Plaintiff's motion to compel a further response to Request for Production Nos. 5, 9, 10, 19, 20, 21, 22, and 23 is DENIED; and

c.    Plaintiff's request for Defendant's training materials is DENIED.

2.    As Plaintiff has filed an opposition to Defendant's motion for summary judgment and the present motion to compel has been granted in part, Plaintiff may file an amended opposition to Defendant's motion for summary judgment **no later than April 4, 2016**.   Any amended opposition to Defendant's motion for summary judgment will replace Plaintiff's previously filed opposition to Defendant's motion for summary judgment.   If Plaintiff files an amended opposition to Defendant's motion for summary judgment, the Court will only consider the amended opposition to Defendant's motion for summary judgment in deciding Defendant's motion for summary judgment.   If Plaintiff does not file an amended opposition to Defendant's motion for summary judgment, Defendant's motion for summary judgment will be deemed submitted to the Court, and the Court will issue a ruling in due course.

3.    If Plaintiff files an amended opposition to Defendant's motion for summary judgment, Defendant may file an amended reply in support of Defendant's motion for summary judgment within **fourteen (14) days** of the date of service of

1   Plaintiff's amended opposition to Defendant's motion for summary judgment.

2   Any amended reply in support of Defendant's motion for summary judgment will

3   replace Defendant's previously filed reply in support of Defendant's motion for

4   summary judgment.    If Defendant files an amended reply in support of

5   Defendant's motion for summary judgment, the Court will only consider the

6   amended reply in support of Defendant's motion for summary judgment in

7   deciding Defendant's motion for summary judgment.

8   4.   The Court DENIES Plaintiff's request for appointment of counsel.

IT IS SO ORDERED.

Dated:   **March 1, 2016**

UNITED STATES MAGISTRATE JUDGE